## MILES v. LAURAINE.

The mere fact that a tenant, occupying as his home a house in the yard of his landlord had married a woman who had been of disreputable character, affords the landlord no ground for enjoining the tenant from bringing her to the house in question to live with him as his wife, it not appearing that at any time after the marriage, or for some years prior thereto, she had been guilty of any unlawful or disgraceful act, and the evidence disclosing no good reason for apprehending that she would not conduct herself decently and "live a right life." Especially is this so, where there was evidence to show that the landlord had at one time himself expressed a willingness for the tenant to move his wife to the place if he "would guarantee peace between her and his children by a former wife."
May 11, 1896. Argued at the last term.

Injunction. Before Judge Kimsey. Habersham county. October 14, 1895.

The petition of Lauraine alleged, that on October 27, 1894, he purchased a farm of Capps, who had rented it to Miles, who at the time of the contract of rental was in good standing and whose wife and family were honest, upright and virtuous. The contract was transferred to plaintiff, and Miles knew it. His wife afterwards died, and in August or September, 1895, he married a woman of disreputable character. He occupies a house in the yard of plaintiff, together with his family, within a few feet of the house where plaintiff and his family reside. Plaintiff's business requires him to be absent much of the time, his wife and little children remaining at home. The contract under which Miles holds the place will not expire until January 1, 1896. He has admitted that his wife's character is bad; plaintiff has offered him another house on the farm, some distance from plaintiff's house, but Miles refuses to move thereto, and declares his intention to stay where he is and to move his wife into the house in the plaintiff's yard, and is about to do so. He has at various

times attempted to create disturbance on the place, by bringing his wife. The prayer is, that he be restrained from moving or attempting to move his wife to the farmhouse located in plaintiff's yard. The petition was brought on September 11, 1895.

The material allegations were denied by defendant's answer. He also demurred for want of equity and for want of a cause of action. At the hearing plaintiff introduced the following testimony: Some time before the last marriage of Miles, plaintiff, hearing rumors as to the same, asked a son of Miles if it was true that his father was going to marry the woman in question. He said he believed it, that he and his sisters and brothers objected to the marriage because she was a woman of bad character, and that during his mother's lifetime his father admonished them against visiting said woman. Miles is a tenant on plaintiff's farm, holding under a contract existing at the time plaintiff purchased it. He has violated the contract in various and sundry ways. Up to the time of his second marriage the best of feeling existed between him and plaintiff. The general character and reputation of his second wife are bad. He stated to plaintiff, in the presence of W. S. Erwin, that his wife did not deny that she had been a bad girl, but that she was willing her life should show she intended living a right life; whereupon plaintiff consented for Miles to bring his said wife on the place, if Miles would guarantee peace between her and Miles' children, as the objection had first come from them. The better class of people in the neighborhood do not associate with the woman in question; it is neighborhood report that she at one time gave birth to an illegitimate child; she has been spoken of as a common prostitute.

The testimony for defendant was, that several years ago, when Miles' wife first grew up, she gave birth to an illegitimate child, but since then she has been orderly and well behaved, and such has been her reputation in the

neighborhood; the witnesses have heard nothing further against her character.

The temporary injunction was granted, and defendant excepted.

*Charles L. Bass*, for plaintiff in error.
*George P. Erwin*, contra.

ATKINSON, Justice.

The ancient feudal system which prevailed in England in earlier days has never existed in Georgia, and the right of the landlord to interfere with and control the domestic relations of his tenants has received no recognition from the laws of this State. The relation of landlord and tenant rests upon contract, and in the absence of an express stipulation to the contrary, we can find no warrant in the law for the proposition that a landlord may lawfully exclude from the domicile of the tenant the wife of the latter, who may be, for any reason, distasteful to him. If the tenant should introduce into his premises disreputable or disorderly characters, such as would tend to convert an ordinarily respectable tenement into a bawdy house, or one frequented by disorderly persons and others of ill fame, such use of the premises by the tenant might well be enjoined, as not within the contemplation of the parties at the time the contract, under which he entered, was executed; but we find nothing in the record in the present case to justify the application of such a doctrine. The person whose introduction into the house in question was objected to by the landlord was the lawful wife of the tenant. It is true, from the record, that she had not theretofore led a blameless private life. Upon the contrary, she had been guilty of indiscretions. She had, however, expressed a determination to change her method of living. She had become the lawful wife of a respectable man. He gave her the opportunity to demonstrate her willingness to lead a virtuous life, and in the absence of a stipulation

that this particular person should not be admitted into the tenement, she was entitled to have the opportunity of vindicating her claims to future respectability.   We find in this record no evidence of a breach of any legal or moral duty due from the tenant to the landlord, and in the absence thereof, there was no authority for his exclusion from the enjoyment, in such manner as he saw proper, of the premises in dispute.   Sensitive persons who would shield themselves from contact with disagreeable neighbors should either move out, or protect themselves by covenant. The judgment granting the injunction is          *Reversed.*